Argued January 10, reversed March 1, 1973

WISBEY, *Respondent, v.* NATIONWIDE
MUTUAL INSURANCE COMPANY, *Appellant.*

507 P2d 17

*Lynne W. McNutt,* Coos Bay, argued the cause for

appellant. With him on the briefs were McNutt, Gant, Ormsbee & Gardner, Coos Bay.

*Fred P. Eason,* Coos Bay, argued the cause and filed the brief for respondent.

HOWELL, J.

Plaintiff filed this declaratory judgment action against his insurer to determine coverage under the uninsured motorist portion of plaintiff's policy with defendant. The facts were stipulated and the trial court entered a judgment for plaintiff. Defendant appeals.

The sole issue is whether plaintiff became the owner of a 1951 Chevrolet automobile more than 30 days prior to plaintiff's accident with an uninsured motorist on September 21, 1970.

Plaintiff's policy contained a clause providing for automatic insurance coverage for insureds who acquire an additional auto. The clause stated:

"(1) Coverages A, B, C(1), C(2), D(1) and F shall also apply to:

"\* \* \* \* \*.

"(b) a land motor vehicle, ownership of which is acquired by the Policyholder \* \* \* which has not, except as a replacement, been the subject of such ownership for more than 30 days next preceding the occurrence. \* \* \* The Policyholder shall pay any additional premium for this protection."

The stipulated facts are summarized as follows: Plaintiff, owner of a Toyota automobile, was interested in purchasing a 1951 Chevrolet station wagon.

He located one which was inoperable and without tires. "On or before August 20, 1970" plaintiff paid the seller $35 in cash for the auto, and the seller gave plaintiff "possession and control of the 1951 Chevrolet." The Chevrolet remained on the seller's premises. The certificate of title was not available at that time and was not delivered to plaintiff until September 3, 1970.

The tires previously had been removed by the seller, and, as part of the "deal," the seller was to procure the tires for plaintiff. This was done by the seller on September 3 when he delivered the title.

Subsequently, the plaintiff did some repair work on the vehicle, mounted the tires, and towed the vehicle from the seller's property to plaintiff's home.

On September 21, 1970, while conducting a test drive with the Chevrolet, plaintiff sustained the accident with the uninsured motorist.

If the Chevrolet became the "subject of [plaintiff's] ownership on or before August 20, 1970" when plaintiff paid for the auto, then plaintiff cannot recover, for he would have had ownership for more than the 30 days allowed by the policy.

Because the certificate of title and the tires were not delivered until after August 20, plaintiff contends he did not have ownership of the car for more than 30 days prior to the accident.

■ Under our statute ORS 481.117, the certificate of title is prima facie evidence of ownership of an automobile. However, the effect of the certificate of title as evidence of ownership may be overcome and the prima facie showing rebutted. *Wiebe v. Seely, Administrator,* 215 Or 331, 335 P2d 379 (1959). In *Dicillo et al v. Osborn et al,* 204 Or 171, 282 P2d 611

(1955), we held that the presumption created by ORS 481.117 indicates nothing more than that the party named in the certificate is the repository of title. "It does not undertake to signify whether or not he is the beneficial owner." 204 Or at 187.

■ Ownership of an automobile implies the right of possession and control. *Judson v. Bee Hive Auto Service Co.,* 136 Or 1, 8, 294 P 588, 297 P 1050, 74 ALR 944 (1931).

In the instant case, according to the parties' own stipulation of facts:

"From the time of paying the $35.00 purchase price, [plaintiff] had full control, right to possession, and exclusive dominion over the 1951 Chevrolet. [Seller] had no further control over it. [Plaintiff] had bought the 1951 Chevrolet at its location in [seller's] yard. When and where he moved it after payment of the purchase price was within the exclusive discretion of [plaintiff]."

Under the stipulation, the Chevrolet automobile was the subject of plaintiff's ownership without respect to the undelivered certificate of title.

The plaintiff contends that since the tires were not available until September 3, 1970, ownership had not passed to him more than 30 days prior to the accident. He relies on the theory that when some act remains to be done by the seller for the purpose of putting the subject of the sale into a deliverable condition or to deliver the goods at a particular place, ownership does not pass until such act is performed. Plaintiff cites *Wade v. Johnson,* 111 Or 468, 227 P 466 (1924), in support of this contention. There, the seller of a band of sheep, under the terms of the sale, was obligated to remove the unsound animals and de-

liver the band in good condition to a certain stockyard. The removal of the unsound animals and delivery to the stockyard were conditions of the sale. In the instant case, removal of the auto was the plaintiff's obligation, and procuring the tires and making the vehicle drivable were not conditions of any delivery. When and where the auto was removed was within the exclusive discretion of plaintiff.

Finally, the plaintiff contends that "ownership" should be determined only from the time the car is operable, because "this is the earliest time the insured needs protection under the liability provisions of his policy." Plaintiff relies on the case of *Glens Falls Insurance Company v. Gray,* 386 F2d 520 (5th Cir 1967). There, the insured's policy covering two automobiles was issued for the period February 12, 1960 to February 12, 1961. The policy required the insured to give notice to the company of the ownership of any additional vehicles and such notice had to be given within the policy year. The parties stipulated that on January 10, 1961, prior to renewal of the policy, the insured "came into the possession of" an inoperable Oldsmobile. The insured renewed the policy for the subsequent year February 12, 1961 to February 12, 1962, for the original two owned autos. On February 20, 1961, the insured "actually owned" the Oldsmobile, and shortly thereafter the Oldsmobile was repaired and became operable. The insured gave notice to his insurance agent to include the Oldsmobile in his policy, but the notice was not forwarded to the company. When the insured was involved in an accident, the insurer denied coverage.

Since the parties stipulated that the insured acquired legal title and "actually owned" the Olds-

mobile during the policy year and that notice was given to defendant's agent during the policy year, the insured was entitled to recover. However, the court supported its conclusion that ownership had not been acquired prior to the policy year by stating that possession of an inoperable auto could hardly be considered ownership for liability insurance purposes. The principal purpose of the insurance was to provide coverage for an auto which was to be driven and might become involved in an accident.

A California Court of Appeals reached an opposite conclusion in *Williams v. Standard Accident Insurance Company*, 158 Cal App 2d 506, 322 P2d 1026 (1958). There, the insurance policy provided automatic coverage for newly acquired autos if the insured notified the company within 30 days of the date of delivery to the insured. At the time of delivery of the auto for which the insured claimed automatic coverage, the car was inoperable and without tires or wheels. The insured rebuilt the car, and it was operating at the time of the accident. The insured contended that because the car was not operable until a time less than 30 days prior to the accident, it was covered by the policy.

The court held that the car involved was an "automobile" and the fact that it was not used on the highway "did not change it into something else." Consequently, the insured owned the "automobile" more than 30 days before the accident. The court also pointed out that the policy coverage was not restricted to liability arising out of use of the auto on a highway but also included coverage for damages arising from ownership, maintenance or use of the auto.

The policy in the case at bar, like the policy

in the California case, includes not only liability cover-age for use on the highway, but also provides coverage for damages arising out of "ownership, maintenance or use, including loading or unloading" of the auto. In addition, the policy provides coverage for fire and theft of the auto. Consequently, we disagree with plain-tiff's statement and cannot rely on the *Glens Falls* au-thority that when the car becomes operable is "the earliest time the insured needs protection under the liability provisions of his policy."

■ We conclude that plaintiff acquired ownership of the vehicle more than the 30 days prior to the ac-cident and therefore is not entitled to recover under the terms of the policy.

Reversed.