**Melvin L. MATLOCK, Plaintiff and Respondent,**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, Defendant and Appellant.**

**No. 14107.**

Supreme Court of Utah.

Feb. 26, 1976.

L. L. Summerhays, of Strong & Hanni, Salt Lake City, for defendant-appellant.

Richard W. Campbell, Ogden, for plaintiff-respondent.

TUCKETT, Justice:

The plaintiff commenced these proceedings in the District Court of Weber County seeking a declaratory judgment declar-

---

1. Utah Constitution, Article VIII, Section 9.

2. *State v. Sheldon,* 545 P.2d 513 (Utah 1976).

ing that a certain automobile policy issued to the plaintiff by the defendant afforded coverage. The district court found in favor of the plaintiff, and the defendant appeals.

The plaintiff was an owner of an orchard in Delta County, Colorado. The orchard was operated as a separate business under the general supervision of a foreman, and separate books of account were kept in connection with that business. The plaintiff is a physician practicing in Ogden, Utah, and all business affairs in connection with his practice were handled separately from those of the orchard. The Colorado property was known as M & M Orchards, and a separate bank account was maintained in connection with the orchard. For many years, plaintiff had insured the vehicles used in connection with the orchard with the defendant company. During the course of that period, a number of vehicles were acquired for use in the orchard operation and were covered by the policies issued by the defendant. During those times the premiums were paid by checks drawn on the orchard bank account. During this period, the plaintiff acquired other automobiles which he kept at his places of residence in Idaho and Utah. Those vehicles were not used in connection with the orchard business. Defendant was well aware of the fact that the plaintiff had other vehicles.

In January 1973, the plaintiff agreed to purchase a used truck from North Ogden Canning Company. The plaintiff paid the purchase price but the truck remained in a locked enclosure on the Canning Company's premises until April 6, 1973. On the latter date the plaintiff and his orchard foreman went to the Canning Company's premises where they secured possession of the truck, and after minor repairs were made, the foreman departed Ogden, Utah, on April 7, to take the truck to the orchard in Colorado. En route the truck was in-volved in a one-vehicle accident and the foreman was injured. On April 7, the plaintiff, by letter, notified the defendant that he had acquired the vehicle and requested that it be covered. The plaintiff requested the same coverage as on a truck he had in use at the orchard, which was only for public liability. Sometime later the injured employee filed suit against the plaintiff in the Federal Court in Colorado claiming the vehicle was unsafe. The defense of this claim was tendered to the defendant and refused.

The policy under consideration provided for automatic coverage of a newly acquired automobile if the insured notified the company within 30 days after its acquisition. The automatic insurance contained the proviso that to be effective the company must insure all automobiles owned by the insured as of the date of delivery.

The defendant relies on three defenses: (1) that the plaintiff did not notify the company within 30 days after the acquisition of the new vehicle, and in this connection claims that the plaintiff acquired the vehicle in January 1973; (2) that all of the plaintiff's automobiles were not insured by the defendant; and (3) the truck acquired had a larger capacity than the limit of 1500 pounds specified in the policy for a farm truck. As to (1) above, the trial court found that the plaintiff acquired the vehicle in question on April 6, 1973, and the record supports that finding. The common ordinary meaning to be attributed to the policy's language can only mean that the insured acquired the vehicle when he took possession of it.[1] In that connection, the defendant assumed no risk under the terms of its policy prior to the plaintiff's possession. As to (2) above, the plaintiff had maintained coverage on the vehicles used in the orchard operation over a number of years. The orchard business was conducted separately and the defendant was well aware of the fact that

1. *Yahnke v. State Farm Fire and Casualty Co.*, 4 Ariz.App. 287, 419 P.2d 548; *Glens Falls Ins. Co. v. Gray*, 5 Cir., 386 F.2d 520; *Mathews v. Marquette Casualty Co.*, 152 So. 2d 577 (La.App.).

the plaintiff had other vehicles insured with other companies but continued to accept the premiums without objection and without warning plaintiff that it would use that provision to defeat a claim which might be made under the policy. In view of these circumstances, we are of the opinion that the defendant waived that provision of the policy.[2] In connection with (3) above, the trial court found that the weight provision contained in the policy was only a guideline which the defendant had not enforced in the past. After the accident, numerous communications were had between the plaintiff and the defendant concerning the accident and the insurance coverage. Agents of the defendant entered into an investigation and led the plaintiff to believe that the claim against the policy was being investigated and that payment would be made. The defendant insured the truck in question and collected the premium therefor. On October 29, 1973, defendant issued a corrected policy contract which recited that it was effective March 30, 1973, through March 30, 1974.

After reviewing the entire record, we are of the opinion that the trial court was correct in its ruling that the policy afforded coverage to the plaintiff. The judgment of the court below is affirmed. The respondent is entitled to costs.

MAUGHAN, J., concurs.

CROCKETT, Justice (concurring separately):

It is important to have in mind that the defenses asserted involve mixed questions of law and fact; and that as to the latter, it is the prerogative of the trial court both to judge the evidence and to draw any reasonable inferences therefrom.

I do not join in a general and invariable rule that the time of "acquisition" of a vehicle is when one takes possession of it. I think it may depend on what the parties intended, or what under the circumstances they should reasonably be deemed to have intended, with respect to the policy coverage in relation to the occurrence on which the claim is based. E. g., if this had been a fire insurance policy, the date of "acquisition" may have been January 5, 1973, even though the truck remained in storage. This because the risk of loss commenced at that time; and the insurer should have been notified within the 30 days. But where the policy was one insuring against the risks of the road, I think it consistent with reason for the trial court to determine that, for the purposes of this policy, the plaintiff did not "acquire" the vehicle until delivery, when use of the truck and exposure to the risks insured against would begin.

The same principles apply to the matter of insuring "all of the vehicles" of the plaintiff. That is, the trial court was justified in finding that by course of conduct in connection with plaintiff's separate orchard business the defendant had waived any other application for the policy's terms.

Similarly those principles apply to the third matter of defense: that the load limit of the truck was above that specified in the policy; and furthermore, the weight capacity of the truck had nothing to do with the particular type of risk out of which the damage and injury arose.

For the foregoing reasons I concur in the decision affirming the findings and judgment of the trial court.

HENRIOD, Chief Justice (concurring in part and dissenting in part):

This case seems to hinge on one or both of two concepts: 1) whether "acquisition" means climbing in the car and driving or towing it away, or occurs on the date one becomes its unquestioned owner; and 2) whether, irrespective of rights under the policy, the insurer, by representation, procrastination or indecision, has wiped out a defense on a sort of estoppel basis.

2. *Boling v. State Farm Mut. Auto. Ins. Co.*, Mo., 466 S.W.2d 696.

I concur in the result for the latter reason, but think the main opinion in saying the word "acquisition" means something in the nature of a taking and asportation to initiate liability under the 30-day clause in the policy is unrealistic in an etymological sense, and impractical in the insurance world sense. I am of the opinion that the insured "acquired" the carriage when he *bought it*, not when he took it away,[1] and I dissent from the opinion's conclusion otherwise. All the cases cited in the main opinion in support of its contention otherwise are not dispositive or binding on this court, since each is a lower court decision from which apparently no appeal was pursued to a higher state or federal court.

ELLETT, Justice (dissenting):

Unfortunately the decision reached by the court in this case is not supported by the facts nor the cases cited and therefore I respectfully dissent.

In early January of 1973 Dr. Melvin L. Matlock's father-in-law offered to sell a 1951 one and one-half ton truck from a liquidating canning company in Ogden. After checking with his farm manager in Delta, Colorado, respondent agreed to buy the truck for use on his farm. He went to the North Ogden Canning Company, inspected the vehicle and sat in it while a Mr. Randall started it. Because respondent had no immediate use for the truck the keys and vehicle were left at the canning company. Randall signed over the title on January 5, 1973, and respondent drew a check for $750 dated January 9, 1973, from his farm account. Sometime later Dr. Matlock mailed the title and registration to a Mr. Horton, manager of respondent's farm in Delta, Colorado. Because of a busy work schedule Horton was unable to take possession of the truck until April.

Prior to getting the vehicle Horton re-registered it and secured a Colorado title.

The new title listed January 5, 1973, as the date of purchase.

On April 6, 1973, respondent and Horton got the truck from the Canning property and took it to respondent's house in Ogden. The next day Horton drove the truck to Colorado, where later in the evening he was involved in an accident. The same day, April 7, 1973, respondent mailed a letter advising the defendant he had purchased and put in service effective that date a used one and one-half ton truck which he would like insured for liability only with the same coverage as the Ford truck he had under Policy No. 506–14–76–1.

Respondent's policy provided for automatic coverage of newly acquired vehicles if (among other things) three provisions were met: (1) that the insurance company be informed within 30 days after acquisition; (2) that all respondent's vehicles be insured with defendant; and (3) that the vehicle not have a weight capacity greater than 1,500 lbs.

The majority holds that acquisition was not until April 6, 1973, when respondent actually drove away with the truck, citing *Yahnke v. State Farm Fire and Casualty Co.*, 4 Ariz.App. 287, 419 P.2d 548 (1966) as authority. This case holds exactly the opposite. The Arizona court said that the 30-day period began to run when respondent became the "owner" of the vehicle. This was January 5, 1973, for Dr. Matlock. Other jurisdictions have affirmed the principle that possession is not a requirement of ownership. (*Commercial Standard Insurance Co. v. Universal Underwriters*, 282 F.2d 24 (1960, 10th Circuit, Okl.); *Wisbey v. Nationwide Mutual Insurance Co.*, 264 Or. 600, 507 P.2d 17 (1973)).

The other cases cited by the majority in support of its rule are not on point.

Black's Law Dictionary defines "acquisition" as the act of becoming the owner of

---

1. Appleman, Insurance, Vol. 7, Section 4293; *Pharoah v. Burnett & Moore*, 112 Okl. 188, 240 P. 743; *Wisbey v. Nat. Mut. Ins. Co.*,

264 Or. 600, 507 P.2d 17; Title 41–1–1(u), Utah Code Annotated 1953.

property, or the act by which one acquires or procures the property. In the past courts have placed primary emphasis on the intentions of the parties in determining whether ownership has been established (*United States Fidelity & Guaranty Co. v. Minault,* 96 N.H. 168, 72 A.2d 161 (1950) ). There can be no doubt from the facts of this case that respondent intended to acquire ownership in the truck on January 5, 1975, when title was delivered to him. From that point on the 30-day automatic coverage began to run.

The second requirement in question here was the necessity for *all* respondent's vehicles to be covered by defendant. This provision was clearly set forth in bold print on the front page of the policy. The record does not show whether any exceptions were ever made to this requirement. However, the sound administrative policy behind such a rule limits unnecessary liability for the insurance company as well as provides definite coverage for clients during periods of vehicle exchanges. The undisputed facts reveal that respondent did not have all his cars insured with defendant. Respondent knew or should have known he would not be covered under the automatic provision if he failed to meet this policy requirement. The majority attempts to place the responsibility on defendant to inform all its clients every time one fails to qualify under any provision within their policy. Such a burden is as impractical as it is unfair. Defendant did not expressly or implicitly waive this requirement.

The third condition respondent breached was that his truck exceeded the maximum insurable load capacity by more than twice the limit. Respondent's policy specifically stated that a farm automobile like a truck have a load capacity of 1,500 lbs. or less. Respondent purchased a one and one-half ton truck (3,360 lbs.). Clearly, defendant could have elected to insure respondent's "overweight" truck had it waived this provision. But defendant has continually rep-

resented that it intended to have the literal meaning of this provision enforced. The court here rationalizes that this provision was a mere guideline. The majority's point might have some merit if the difference was not so great.

The concurring opinion raises some "sort of estoppel" theory. Yet on the face of the facts it is clear that defendant never intended or represented that it would insure respondent's truck on any basis other than what was stated in his policy. Respondent owned the truck for more than four months before attempting to notify defendant of its acquisition. Therefore, defendant should not be subject to liability due to respondent's procrastination, indecision or error.