Argued and submitted January 3, affirmed March 13, 2002

CITY OF PENDLETON,
*Respondent,*

*v.*

ONE 1998 DODGE STRATUS 4 DOOR,
Oregon License MHSAW,
VIN/1B3EJ5H92N134032;
and Jeremy Todd Graybill,
*Defendants,*

*and*

Dan JONES
and Becky Jones,
*Appellants.*

CV980215; A110333

42 P3d 339

Steven M. Lindsey argued the cause for appellants. On the briefs were Adam L. Dean and Des & Shannon Connall, LLP.

Peter H. Wells argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

In this *in rem* civil forfeiture action, claimants Dan and Becky Jones[1] appeal from a judgment forfeiting a 1998 Dodge Stratus to plaintiff City of Pendleton. Claimants argue, *inter alia*, that the trial court erroneously rejected their "innocent owner" defense to forfeiture pursuant to ORS 475A.085.[2] We conclude that claimant Dan Jones never had an ownership interest in the Stratus and, thus, could not assert the "innocent owner" affirmative defense. We further conclude that, while claimant Becky Jones is listed as a co-owner on the Stratus's certificate of title, the evidence is sufficient to rebut that *prima facie* showing of ownership, and she has no interest to recover. Accordingly, we affirm the trial court's judgment forfeiting the Stratus to plaintiff.

The material facts, as found by the trial court,[3] are as follows: On November 21, 1997, three days after his 18th birthday, Jeremy Graybill purchased the defendant property in this case, a four-door 1998 Dodge Stratus, for $21,010. Graybill's mother, Becky Jones, paid nearly one-half of the total purchase price, $10,010, as a gift to Graybill[4] using a check drawn from her personal checking account. Thereafter, both Becky Jones and Graybill were listed as co-owners on the Stratus's certificate of title.

In January and February 1998, Officer Hawkins of the Blue Mountain Enforcement Narcotics Team began

---

[1] For cogency of analysis, we will refer to Dan Jones and Becky Jones individually by their complete names, and collectively as "claimants."

[2] The 2001 Legislative Assembly passed a comprehensive series of amendments to the provisions of the civil forfeiture statute, including ORS 475A.085. Or Laws 2001, ch 780. Those amendments, however, are inapplicable to this dispute and all references to the provisions of ORS chapter 475A are to the 1997 version of the statute.

[3] We state the facts as found by the trial court when supported by evidence and, if the trial court has not made findings concerning disputed facts, we presume the facts were decided in a manner consistent with the trial court's ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

[4] Both before the trial court and on appeal, the parties disagree as to whether Becky Jones's contribution constituted a loan or a gift. The trial court rejected claimants' argument that the money had been loaned to Graybill and concluded that the contribution was a gift. That factual conclusion is supported by the evidence before the trial court and the permissible inferences flowing from that evidence. *See Ball*, 250 Or at 487.

working undercover as a student at Pendleton High School. On February 5, 1998, while at school, Hawkins approached Graybill about purchasing drugs, and Graybill offered to sell Hawkins some marijuana. Hawkins agreed, so Graybill and Hawkins drove in the Stratus to Graybill's house to complete the sale.

When they arrived at Graybill's house, Dan Jones, Graybill's stepfather, was there. Hawkins asked Graybill if his stepfather's presence was a problem, and Graybill responded, "Oh, he's cool with it." Hawkins and Graybill then went into Graybill's room, where Graybill sold Hawkins an eighth of an ounce of marijuana for $25. Thereafter, they returned to Pendleton High School in the Stratus.[5]

In March 1998, plaintiff initiated this *in rem* action, seeking civil forfeiture of the Stratus pursuant to ORS 475A.005 *et seq.*, which authorizes forfeiture of a vehicle if, *inter alia*, it is used "to transport or in any manner facilitate the transportation, sale, receipt, possession or concealment" of controlled substances. ORS 475A.020(4). Dan and Becky Jones, as claimants, opposed forfeiture. At trial, claimants did not dispute that Graybill had, in fact, sold marijuana to Hawkins. Claimants argued, however, that (1) the Stratus was not an instrumentality of the crime of distribution of controlled substances and, thus, was not subject to forfeiture under ORS 475A.020(4); and (2) as "innocent owners" of the Stratus, they had an affirmative defense to forfeiture pursuant to ORS 475A.085(1) (codifying "innocent owner" affirmative defense). *See* ORS 475A.110(6) (indicating, when read in conjunction with ORS 475A.085(1), that, if a claimant successfully asserts "innocent owner" defense, claimant's interest in subject property "shall be returned or conveyed immediately to the claimant").

The trial court first rejected claimants' "not an instrumentality" argument. The court concluded that, because Graybill used the Stratus to transport Hawkins to

---

[5] As a result of that drug sale, Graybill was prosecuted for and convicted of delivery of a controlled substance.

the place where the drug sale took place, it was used to facilitate the sale of marijuana and, thus, was subject to forfeiture.

In addition, the court determined that neither Dan nor Becky Jones could prevail on the "innocent owner" affirmative defense. With respect to Dan Jones, the court found that there was insufficient evidence to support his claim that he was an owner of the Stratus. The court further found, based on Graybill's "he's cool with it" statement, that Dan Jones was aware of Graybill's drug-related activities. Accordingly, the trial court concluded that Dan Jones could not successfully assert the "innocent owner" defense under ORS 475A.085(1) (claimant asserting "innocent owner" defense must prove that he or she had an interest in the property and did not acquiesce in the prohibited conduct).

With respect to Becky Jones, the trial court acknowledged that she was listed as an owner on the Stratus's certificate of title, but concluded that, notwithstanding that notation, Becky Jones had no ownership interest in the Stratus.[6] In particular, the court found that Becky Jones's $10,010 contribution to the purchase of the Stratus was a gift and that, despite Becky Jones's name on the certificate of title, Graybill was the vehicle's sole owner. Accordingly, the trial court issued a judgment of forfeiture vesting in plaintiff all rights, title, and interest in the Stratus. *See* ORS 475A.015 ("all rights, title and interest in property forfeited under this chapter shall vest in the forfeiting agency upon commission of the prohibited conduct").

On appeal, claimants dispute the trial court's conclusion that they are not "innocent owners" entitled to a return of their interest in the Stratus pursuant to ORS 475A.085(1).[7] Beyond that merits argument, claimants argue that the Oregon Property Protection Act of 2000 (OPPA), set out at Article XV, section 10, of the Oregon Constitution,

---

[6] On appeal, plaintiff concedes that, if Becky Jones has an ownership interest in the Stratus, she did not acquiesce in Graybill's actions here and, thus, would constitute an "innocent owner" for purposes of ORS 475A.085(1).

[7] Graybill did not appeal from the trial court judgment forfeiting his interest in the Stratus.

should be applied retroactively to this dispute and that, under the OPPA's revised burden of proof,[8] plaintiff has failed to prove that the Stratus is subject to forfeiture. Finally, claimants argue that the trial court erred in failing to conduct a mitigation hearing pursuant to ORS 475A.090 (describing procedures for filing and reviewing mitigation motion).

We begin with claimants' arguments on the merits. The trial court's finding that Dan Jones never had an ownership interest in the Stratus is supported by the record. That finding is dispositive of Dan Jones's "innocent owner" defense. Consequently, we affirm the trial court's judgment as to Dan Jones.

■■ The trial court's determination that Becky Jones did not have an ownership interest requires a more detailed discussion. As noted, Becky Jones was listed as an owner on the Stratus's certificate of title. Pursuant to ORS 803.010, a "certificate of title is *prima facie* evidence of the ownership of a vehicle or of an interest therein." Thus, in instances where two unmarried persons are listed as co-owners on a vehicle's certificate of title, that notation constitutes *prima facie* evidence that both named individuals are cotenants in the vehicle[9] with each owning an equal interest. *See Rogelis v. Pettis,*

---

[8] For example, Article XV, section 10(4), states:

"In a civil forfeiture proceeding if a financial institution claiming an interest in the property demonstrates that it holds an interest, its interest shall not be subject to forfeiture.

"In a civil forfeiture proceeding if a person claiming an interest in the property, other than a financial institution or a defendant who has been charged with or convicted of a crime involving that property, demonstrates that the person has an interest in the property, that person's interest shall not be subject to forfeiture unless:

"(a) The forfeiting agency proves by clear and convincing evidence that the person took the property or the interest with the intent to defeat the forfeiture; or

"(b) A conviction under subsection (3) is later obtained against the person."

[9] Nonmarried persons can co-own personal property either as tenants in common or as joint tenants with right of survivorship. A joint tenancy in personal property, however, "may be created only by a written instrument which expressly declares the interest created to be a joint tenancy." ORS 105.920 (discussing joint tenancies in personal property). Because there is no evidence in the record that

49 Or App 537, 540-41, 619 P2d 1339 (1980), *rev den* 290 Or 449 (1981) (in absence of evidence to the contrary, cotenants are presumed to have equal interests in property).

■■ The presumption of equal ownership, however, can be rebutted. In particular, evidence other than the certificate of title can be used to demonstrate that cotenants, while both entitled to use and enjoy the entire property,[10] have disproportionate ownership interests in the property. *See Rogelis,* 49 Or App at 541; *see also United Bank of Denver v. Gardos,* 80 Or App 342, 345-46, 722 P2d 1261, *rev den* 302 Or 158 (1986) (cotenants are presumed to have an undivided one-half interest in property "unless the evidence shows a larger contribution by one party in acquiring the property"). Similarly, additional evidence may be used to demonstrate that, while a cotenant is listed as an owner on a vehicle's certificate of title, he or she is not, in fact, an owner of the vehicle. *See Brunk v. Horton,* 280 Or 239, 242, 570 P2d 382 (1977) (presumption of ownership created by vehicle's certificate of title rebutted where other evidence was "sufficient for the trial judge to make a contrary determination"); *Wisbey v. Nationwide Mut. Ins. Co.,* 264 Or 600, 602-03, 507 P2d 17 (1973) (*prima facie* proof rebutted where evidence showed that the plaintiff had paid for vehicle and was given possession before certificate of title became available); *Weibe v. Seely, Administrator,* 215 Or 331, 342, 335 P2d 379 (1959) (stating principle that the statutory presumption of ownership arising from notation on a vehicle's certificate of title can be rebutted). Thus, given proper proof, the finder of fact can conclude that the presumption of ownership created by ORS 803.010 has been rebutted and that, notwithstanding a party's listing as an owner on the certificate of title, he or she is not, in fact, an owner of the vehicle. *Weibe,* 215 Or at 342.

■ Here, there is no dispute that Becky Jones is listed as an owner on the Stratus's certificate of title—and, thus, she made a threshold showing of ownership. Nevertheless, the

---

Graybill and Becky Jones held the Stratus as joint tenants, we necessarily assume that Becky Jones's interest, if any, is as a tenant in common.

[10] *See Sheppard v. Weekly,* 72 Or App 86, 92, 695 P2d 53 (1985) ("In the absence of contradictory evidence, it is presumed that co-owners enjoy equal rights to use and control the property, independently of the other owner's knowledge or consent.").

evidence before the trial court was sufficient to allow the trial court to conclude that that *prima facie* showing had been rebutted. In particular, the evidence permitted the court to find that, while Becky Jones had contributed $10,010 toward the purchase of the Stratus, that contribution was a gift to Graybill. That is, Becky Jones never purchased an interest in the Stratus.[11] Similarly, there is no evidence—and Becky Jones does not assert—that Graybill gave her an interest in the Stratus as a gift.[12] Given that evidence, the trial court, as finder of fact, could—and implicitly did—determine that the presumption of ownership created by ORS 803.010 was rebutted. Because Becky Jones was not an "owner" of the Stratus, the trial court correctly rejected her "innocent owner" defense.

The OPPA, even if applicable,[13] does not alter that conclusion. The OPPA affords protection only to individuals with a demonstrated interest in property otherwise subject to forfeiture. *See* Or Const, Art XV, § 10(4) (revising proof standard for forfeiture of property of alleged "innocent owner" if such claimant "demonstrates that the person has an interest in the property"). Claimants' argument presupposes that they had an interest in the Stratus that might be subject to forfeiture. As discussed above, however, neither Dan Jones nor Becky Jones has any interest in the Stratus. Rather, Graybill was the vehicle's only owner, and he has not appealed from the trial court's judgment that his interest was

---

[11] Indeed, Becky Jones never claimed to have purchased an interest in the car. Rather, she asserted only that the $10,010 was a loan. Even if the trial court had accepted that characterization of the $10,010 transfer—which the court expressly rejected—it would not, without more, create an ownership interest in the car. A loan to purchase property, absent some agreement designating the property as collateral and giving the lender rights in the collateral upon default, does not give rise to any interest in the property. *See generally former* ORS 79.2030, *repealed by* Or Laws 2001, ch 445, § 187 (nonpossessory security interest unenforceable without, *inter alia*, a signed security agreement describing the collateral). *See also Bolton v. Schimming et al*, 226 Or 330, 333, 360 P2d 540 (1961) (implying that a person who merely loans money for the purchase of an automobile is not the true owner of the automobile notwithstanding listing as co-owner on certificate of title).

[12] There is no evidence that Becky Jones—or, indeed, anyone other than Graybill—ever used the Stratus. Graybill maintained the insurance on the car.

[13] Given the nature of our disposition, we need not, and do not, decide whether the OPPA applies to forfeitures effected before its enactment.

subject to forfeiture. Because claimants had no interest to forfeit, the OPPA is inapplicable to claimants.

Finally, claimants argue that the trial court erred in failing to conduct a mitigation hearing pursuant to ORS 475A.090. The mitigation provisions of the civil forfeiture statute apply only to a party "whose interest in the claimed property is forfeited under the terms of the proposed judgment." ORS 475A.090(2). As we have concluded, neither of the Joneses had any potentially forfeitable interest in the Stratus. Thus, for them, ORS 475A.090 is inapposite.

Affirmed.